Jennifer Ishimoto, SBN 211845
John Lee, SBN 229911
Banie & Ishimoto LLP
3705 Haven Ave., #137
Menlo Park, California 94025
Telephone: 650-241-2773
Email: ishimoto@banishlaw.com

Attorneys for Plaintiff Landmark Technology
LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

LANDMARK TECHNOLOGY, LLC,

        Plaintiff,

v.

LAUNCHPAD, INC. (D/B/A MAN CRATES),

        Defendant.

CASE NO.  **'17 CV 0892 WQH NLS**

**COMPLAINT FOR PATENT INFRINGEMENT**

**JURY TRIAL DEMANDED**

Plaintiff Landmark Technology, LLC ("Landmark"), for its Complaint against Launchpad, Inc. (d/b/a Man Crates) ("Defendant" or "Man Crates"), alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq*.

1

2.      This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has personal jurisdiction over Man Crates because on information and belief Man Crates has transacted and is transacting business in the Southern District of California that includes, but is not limited to, the use of products and systems that practice the subject matter claimed in the patents involved in this action.

4.      Venue is proper in this district under 28 U.S.C. §§ 1391(b-c) and 1400(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District where Man Crates has done business and committed infringing acts and continues to do business and to commit infringing acts.

## PARTIES

5.      Plaintiff Landmark Technology, LLC ("Landmark") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 329 Laurel St., San Diego, CA 92101.

6.      Landmark is informed and believes, and on that basis alleges, that LaunchPad, Inc. is a Delaware corporation, doing business as Man Crates in California.  Upon information and belief, Man Crates has a principal place of business at 2694 Middlefield Road, Suite F, Redwood City, CA 94063.  Landmark is further informed and believes, and on that basis alleges, that Man Crates is in the business of gifts for men and derives a significant portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, the Internet website located at http://www.mancrates.com (the "Website") and/or the Man Crates functionality found at https://www.mancrates.com/cart.aspx, and incorporated and/or related systems.  Landmark is informed and believes, and on that basis alleges, that, at all times relevant hereto, Man Crates has done and continues to do business in this judicial district, including, but not limited to,

providing products/services to customers located in this judicial district by way of the Man Crates Website.

## FACTS

7.      On September 11, 2001, United States Patent No. 6,289,319 entitled "Automated Business and Financial Transaction Processing System" was duly and legally issued to Lawrence B. Lockwood as inventor.  A true and correct copy of United States Patent No. 6,289,319 is attached hereto as Exhibit A and incorporated herein by this reference.

8.      Specifically, the '319 Patent claims a novel automatic data processing system, including an interactive multimedia terminal capable of providing a video-based user interface while both dynamically sending and fetching remote information in order to fetch new inquiring sequences for the user.  Conventional terminals prior to the invention claimed in the '319 Patent, such as that disclosed in U.S. Pat. No. 4,359,631, were incapable of supporting an interactive video presentation while at the time sending and fetching information to and from remote locations; attempting to perform these functions at the same time on prior art terminals would have resulted in the congestion of their systems, rendering them virtually inoperable.

9.      To solve these issues, the '319 Patent introduced a novel hardware improvement in the claimed terminal. As demonstrated in Figure 2 of the '319 Patent, a DMA unit was positioned independently along its own information handling connection within the terminal, unlike the systems of the prior art.  This unconventional hardware architecture enabled a higher level of interactivity and personalization of user transactions.  In an amendment filed on September 19, 1995, during prosecution of the '319 Patent, the inventor stressed that his claims "define a new set of interrelated apparatuses" and thus that "the claims do not merely recite

the use of 'conventional hardware,'" but were directed to a "claimed new machine," not a method of doing business.

10.     Following a reexamination of Patent No. 6,289,319, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, Number US 6,289,319 C1, on July 17, 2007, confirming the validity of all six (6) original claims and allowing twenty-two (22) additional claims.  A true and correct copy of Ex Parte Reexamination Certificate, Number US 6,289,319 C1 is attached hereto as Exhibit B and incorporated herein by this reference.

11.     Following a second reexamination of Patent No. 6,289,319, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, Number US 6,289,319 C2, on January 31, 2013, confirming the validity of all twenty eight (28) original claims.  A true and correct copy of Ex Parte Reexamination Certificate, Number US 6,289,319 C2 is attached hereto as Exhibit C and incorporated herein by this reference (United States Patent No. 6,289,319, together with the additional claims allowed by Ex Parte Reexamination Certificate, Number US 6,289,319 C1, and reaffirmed by Ex Parte Reexamination Certificate, Number US 6,289,319 C2 shall hereinafter be referred to as the "'319 Patent.")

12.     On September 1, 2008, Lockwood licensed all rights in the '319 Patent to Landmark.  Landmark is the exclusive licensee of the entire right, title and interest in and to the '319 Patent, including all rights to enforce the '319 Patent and to recover for infringement.  The '319 Patent is valid and in force.

13.     On or about October 13, 2016, Landmark sent Man Crates a letter informing Man Crates of the '319 Patent that Man Crates' actions, as more fully described below, constituted infringement of the '319 Patent.

14.     As more fully laid out below, Man Crates has been and is now infringing the '319 Patent, in this judicial district and elsewhere, by providing its

Landmark Technology LLC v. LaunchPad, Inc. (d/b/a Man Crates)
Complaint for Patent Infringement

products/services using electronic transaction systems, which, individually or in combination, incorporate and/or use subject matter claimed by the '319 Patent.

## FIRST CLAIM FOR RELIEF

### (Direct Infringement of the '319 Patent, in Violation of 35 U.S.C. § 271(a))

15.     Landmark refers to and incorporates herein by reference paragraphs 1-14.

16.     Man Crates has directly infringed, and continues to directly infringe, at least Claims 1, 3, 7, 8, 9, 11, and/or 18 of the '319 Patent in this judicial district and elsewhere in California and the United States, through the sales and distribution via electronic transactions conducted on and using at least, but not limited to, its website located at http://www.mancrates.com.

17.     The claims of the '319 Patent relate to "an automated data processing system for processing business and financial transactions between entities from remote sites" comprising a variety of features.

18.     The Man Crates functionality referenced above is "an automated data processing system for processing business and financial transactions between entities from remote sites" practicing the claims of the '319 Patent.

19.     By way of example only, and without limitation, Man Crates' Website, functionality and supporting server infringes at least Claims 1, 3, 7, 8, 9, 11, and/or 18 of the '319 Patent in that, the Man Crates Website, functionality and supporting server, and/ provide a system that practices all of the limitations of the claims and on which Man Crates processes business information and places purchase orders, including:

a.     The functionality and supporting server is an automatic data processing system for processing business and financial transactions between entities from

Landmark Technology LLC v. LaunchPad, Inc. (d/b/a Man Crates)
Complaint for Patent Infringement

remote sites running the Man Crates' functionality which is in communication with the Man Crates' server.

b.    The Man Crates' system includes a central processor (the server and its supporting systems) programmed and connected to process a variety of inquiries and orders transmitted from the Man Crates' functionality running at said remote sites. Man Crates' system allows for a broad range of transactions, thus a range of orders are possible.  The system processes a "variety of inquiries and orders," such as inquiries regarding order history and order status, and the placement of orders for products.

c.    The system is operated through a terminal (e.g., the Man Crates' computer(s) at each of said remote sites), which terminal includes a data processor and operates in response to operational sequencing lists of program instructions (the code constituting the transaction systems).  That terminal includes a DMA positioned independently on its own information handling connection, or its equivalent.

d.    The system fetches additional inquiring sequences in response to a plurality of data entered through a keyboard and in response to information received from the central processor.  For example, the "Login" and "Sign Up" functionalities of Man Crates' Website fetches additional inquiring sequences relating to erroneous or empty data fields, depending on the user's entry and information received from the central processor.

e.    The server of the System and Man Crates' computerized station(s), together with software, practice all of the remaining limitations of Claim 1, 3, 7, 8, 9, 11, and/or 18 of the '319 Patent.  Man Crates' Website, functionality and server, and incorporated and/or related systems, put the invention into service.

20.    Man Crates' Website exerts control over the transactions placed via the claimed terminal.   For example, as explained in its privacy policy on its website,

Man Crates' Website may use cookies "to help Man Crates identify and track visitors, their usage of Man Crates website, and their website access preferences."

21.     Man Crates, on information and belief, is also engaged in internal use of the claimed system, by developing and testing versions of its Website on its own servers. For example, Man Crates has been actively involved in recruiting a "Senior Front-End Engineer" whose duties include "UI testing," as evidenced at https://jobs.lever.co/mancrates/143f6f61-cf7b-4bc6-8c57-d583769f9f7f.  Similarly, Man Crates has actively recruited a "Senior Full Stack Engineer," whose primary responsibility would be Man Crates' "e-commerce application" and the "design, development, and maintenance of the Man Crates platform," as evidenced at https://www.glassdoor.com/job-listing/ror-senior-engineer-architect-man-crates-JV_IC1147394_KO0,29_KE30,40.htm?jl=2360581891.  Man Crates, therefore, by the acts complained of herein, is making, using, selling, or offering for sale in the United States, including in the Southern District of California, products and/or services embodying the invention, and has in the past and is now continuing to infringe the '319 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

22.     Man Crates threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Landmark's irreparable injury.  It would be difficult to ascertain the amount of compensation that would afford Landmark adequate relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required.  Landmark does not have an adequate remedy at law to compensate it for the injuries threatened.

23.     By reason of the acts of Man Crates alleged herein, Landmark has suffered damage in an amount to be proved at trial.

24.     Landmark is informed and believes, and on that basis alleges, that the infringement by Man Crates is willful, wanton, and deliberate, without license and

with full knowledge of the '319 Patent, thereby making this an exceptional case entitling Landmark to attorneys' fees and enhanced damages.

## SECOND CLAIM FOR RELIEF

**(Inducing Infringement of the '319 Patent, in Violation of 35 U.S.C. § 271(b))**

25.     Landmark refers to and incorporates herein by reference paragraphs 1-21.

26.     Landmark is informed and believes, and on that basis alleges, that Man Crates has actively and knowingly induced infringement of the '319 Patent, in violation of 35 U.S.C. § 271(b) by, among other things, inducing its customers to utilize their own device in combination with https://www.mancrates.com and https://www.mancrates.com/cart.aspx, and incorporated and/or related systems, to search for and order information and products from www.mancrates.com in such a way as to infringe the '319 Patent.

27.     For example, Man Crates is inducing its customers to infringe by encouraging them to create new accounts and to sign in to their accounts using their login information to retrieve their order histories, e.g., at https://www.mancrates.com/login.aspx.

28.     By reason of the acts of Man Crates alleged herein, Landmark has suffered damage in an amount to be proved at trial.

29.     Man Crates threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Landmark's irreparable injury.  Landmark does not have an adequate remedy at law.

30.     Landmark is informed and believes, and on that basis alleges, that the infringement by Man Crates is willful, wanton, and deliberate, without license and with full knowledge of the '319 Patent, thereby making this an exceptional case entitling Landmark to attorneys' fees and enhanced damages.

# JURY DEMAND

Landmark demands a jury trial on all issues so triable.

# PRAYER FOR RELIEF

WHEREFORE, Landmark prays for relief as follows:

A.    Judgment that Man Crates has directly infringed, and induced others to infringe, the '319 Patent either literally and/or under the doctrine of equivalents;

B.    Judgment that Man Crates' infringement of the '319 Patent has been willful;

C.    Judgment permanently enjoining Man Crates, its officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the '319 Patent, and from inducing others to infringe the '319 Patent;

D.    Judgment awarding Landmark general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as appropriate, as well as all of Man Crates' profits or gains of any kind from its acts of patent infringement;

E.    Judgment awarding Landmark enhanced damages pursuant to 35 U.S.C. § 284 due to the willful and wanton nature of Man Crates' infringement;

F.    Judgment awarding Landmark all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

G.    Judgment awarding Landmark pre-judgment and post-judgment interest; and

Landmark Technology LLC v. LaunchPad, Inc. (d/b/a Man Crates)
Complaint for Patent Infringement

H.      Judgment awarding Landmark such other and further relief as the Court may deem just and proper.


Dated:  May 3, 2017                               Respectfully submitted,

                                                  BANIE & ISHIMOTO LLP

                                                  By /s/ Jennifer L. Ishimoto
                                                  Jennifer L. Ishimoto
                                                  ishimoto@banishlaw.com
                                                  John A. Lee
                                                  jlee@banishlaw.com

                                                  Attorneys for Plaintiff
                                                  Landmark Technology, LLC

Landmark Technology LLC v. LaunchPad, Inc. (d/b/a Man Crates)
Complaint for Patent Infringement

## **DEMAND FOR JURY TRIAL**

Landmark demands a jury trial on all claims as to which it has a right to a jury trial.

Dated:  May 3, 2017

Respectfully submitted,

BANIE & ISHIMOTO LLP

By /s/ Jennifer L. Ishimoto

Jennifer L. Ishimoto
ishimoto@banishlaw.com
John A. Lee
jlee@banishlaw.com

Attorneys for Plaintiff
Landmark Technology, LLC

11

# TABLE OF CONTENTS

# (EXHIBITS TO COMPLAINT)

|  | Page |
|---|---|
| Exhibit A………………………………………………………………… | 1 |
| Exhibit B………………………………………………………………… | 18 |
| Exhibit C………………………………………………………………… | 23 |

# EXHIBIT A

US006289319B1

(12) **United States Patent**  (10) **Patent No.:**     **US 6,289,319 B1**
Lockwood  (45) **Date of Patent:**     **Sep. 11, 2001**

(54) **AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM**

(76) Inventor: **Lawrence B. Lockwood**, 5935 Folsom Dr., La Jolla, CA (US) 92037

( * ) Notice:     Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **08/347,270**

(22) Filed:     **Nov. 30, 1994**

**Related U.S. Application Data**

(63) Continuation of application No. 08/096,610, filed on Jul. 23, 1993, now abandoned, and a continuation of application No. 07/752,026, filed on Aug. 29, 1991, now abandoned, and a continuation of application No. 07/168,856, filed on Mar. 16, 1988, now abandoned, and a continuation of application No. 06/822,115, filed on Jan. 24, 1986, now abandoned, which is a continuation-in-part of application No. 06/613, 525, filed on May 24, 1984, now Pat. No. 4,567,359.

(51) **Int. Cl.**[7] ...................................................... G06F 17/60
(52) **U.S. Cl.** .............................................................. 705/35
(58) **Field of Search** .................................. 364/408, 406; 235/381, 380, 379; 705/35, 38, 4

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,333,152 | * 6/1982 | Best ...................................... | 395/152 |
| 4,359,631 | * 11/1982 | Lockwood et al. ................... | 235/381 |
| 4,553,206 | * 11/1985 | Smutek et al. ....................... | 395/275 |
| 5,146,404 | * 9/1992 | Calloway et al. ................... | 364/401 |

OTHER PUBLICATIONS

Young, G, "Computer firm to help buyer, shop for loan", Washington Post, Virginia, Real Estate Section, Apr. 9, 1984 (Nexis ™ Excerpts).*

* cited by examiner

*Primary Examiner*—Robert Beausoleil
*Assistant Examiner*—X. Chung-Trans
(74) *Attorney, Agent, or Firm*—Henri J. A. Charmasson; John D. Buchaca

(57)     **ABSTRACT**

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The terminal is programmed to acquire credit rating data relating to the applicant from the credit rating service, and to use the data to compute the credit worthiness of the applicant and the amount which may be loaned to him. The approved loan information is then transmitted to the first computer for further processing by the financial institution.

**6 Claims, 5 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5

US 6,289,319 B1

1

# AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM

## PRIOR APPLICATIONS

This is a continuation application of application Ser. No. 08/096,610 filed Jul. 23, 1993 now abandoned, a continuation application of application Ser. No. 07/752,026 filed Aug. 29, 1991 now abandoned, a continuation of application Ser. No. 07/168,856, filed Mar. 16, 1988 now abandoned, a continuation of application Ser. No. 06/822,115, filed Jan. 24, 1986 now abandoned, which is a continuation-in-part of application Ser. No. 06/613,525 filed May 24, 1984, now U.S. Pat. No. 4,567,359, issued Jan. 28, 1986.

## BACKGROUND OF THE INVENTION

The present invention relates to automatic self-operated terminals, vending machines, and interactive data processing networks. More specifically, this invention relates to terminals used by banking institutions to make their services available at all hours of the day from various remote locations.

Loan processing has traditionally been a labor-intensive business which represents the major activity of banks and other financial institutions. In the processing of a loan application, numerous forms have to be filled-out, loan officers have to explain payment schedules and generally guide the applicant through the loan application process. The financial institution then has to process the application and either telephone, mail, or communicate acceptance or rejection of the loan in person to the applicant. The complexity of the process has so far prevented the application of automatic terminals to this important part of financial institution activities. Automatic vending machines and self-service terminals have evolved to a high degree of sophistication as disclosed in U.S. Pat. No. 4,300,040 Gould, et al. and U.S. Pat. No. 4,359,631 Lockwood, et al. Yet, this high degree of sophistication has not been put to use in the more complex types of goods and services distribution which requires a great deal of interaction between individuals and institutions.

## SUMMARY OF THE INVENTION

The principal object of this invention is to provide an economical means for screening loan applications. When one considers that up to 75% of persons applying for loans fail to meet the financial institution qualification criteria, one realizes that a great deal of labor is required by loan officers before a qualified applicant presents himself.

Another object of the invention is to standardize the reporting and interpretation of credit ratings and their application to loan application processing.

A further object of the invention is to reduce the amount of paperwork and processing time required by each loan application.

It is also an object of the invention to offer a more personal way to apply for credit. Many applicants who would not hesitate to use a mechanical device to place their inquiry are reluctant to inquire about loans requiring face-to-face interaction with a loan officer.

These and other objects are achieved by means of a system that ties together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals. Each remote terminal displays the live image of a fictitious loan officer who helps the applicant through an interactive series of

2

questions and answers designed to solicit from the applicant all the information necessary to process his loan application. The terminal can acquire credit rating information about the applicant from the credit reporting bureau and make a decision based on all the information gathered about the credit worthiness of the applicant and the amount of loan to which he is entitled. The loan amount is then communicated to the applicant and to the financial institution for further processing of the loan.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a general block diagram of the system for automatically processing loan applications;

FIG. 2 is a block diagram showing the major components of the terminal; and

FIGS. 3 to 5 are detailed flow diagrams of the system operation.

## DESCRIPTION OF THE PREFERRED EMBODIMENT OF THE INVENTION

Referring now to the drawings, there is shown in FIG. 1 the general block diagram of the automatic loan processing terminal system. The system links a financial institution 1, a plurality of self-service terminals at various remote sites 2 and a credit rating service 3 by telephone lines or other means of telecommunication. The financial institution 1 is provided with a central processor 4 which is used primarily to process loan applications and handle other financial transactions. The central processor 4 has a communication interface which allows it to access the various terminals 5 at the remote sites and be accessed by them at any time of the day. A communication control unit 6 associated with the central processor 4 assures an orderly sending and receiving of information between the terminals and the central processor. The communication control unit 6 provides for a quick transfer of batches of information to and from the terminals 5 under direct access memory mode. Direct access memory modes are achieved by means of high speed data exchange units such as those manufactured by Metacomp, Inc. of San Diego, Calif. and sold under the mark META-PAKS. The central processor 4 is also provided with a terminal monitor and update unit 7 which is programmed for periodically polling the various terminals 5 in order to verify their status and proper operation and to update the data stored in those terminals as may be required. The memory 8 of the central processor 4 holds some files 9 in which are stored information about the various loans available to customers from the institution. This information includes loan rates and repayment schedules. These loans include real estate loans, loans to finance the purchase of automobiles, boats and other vehicles, personal loans secured by certificates of deposit, stocks and other assets controlled by the financial institution 1 and unsecured personal loans. Loan packages which have been quoted to customers are stored in a quoted case file 10 pending acceptance and execution by the applicant. Once a loan has been approved and accepted it is processed and monitored through and active case file 11. The credit rating service 3 is an institution such as TRW CREDENTIAL SERVICE which maintains financial files of consumers based on past and current loan payment obligations, credit card uses and balance sheets provided as part of loan applications, and makes that information available to a membership of merchants and financial institutions who need to access the credit worthiness of a particular customer. The credit rating service information is processed automatically by a data processor 12 equipped with auto-

US 6,289,319 B1

3

matic communication interface. This interface allows direct access through telephone lines or other communication networks by any subscribing member. The confidentiality of the credit rating service files is guaranteed by use of identifying codes which must be provided with each request.

The system operates as follows. The central processor **4** of the financial institution **1** periodically sends to the terminals **5** at the various remote sites **2** loan rate information and other data pertinent to the loans available from that institution which are extracted from the loan rate file **9**. That information is stored in the various terminals and can be reviewed by an applicant in need of a loan. Once the applicant has selected a type of loan which is available from the institution, he is asked to provide the pertinent personal information data which will be necessary to process his loan application. The information provided by the applicant is supplemented by a financial profile obtained directly from the credit rating service after being automatically requested by the terminal **5**. The terminal **5** is programmed to compute the credit worthiness of the applicant and to approve or disapprove the loan. Once the loan has been approved the applicant is requested to accept it or reject it. Accepted loan information is transmitted to the central processor of the financial institution and stored in the active case file **11**. Information about loans which have not been accepted on the spot, are also transmitted to the financial institution and stored for a period of time in the quoted case file **10**. The customer can return to one of the terminals and accept that loan anytime during the validity period.

Turning now to FIG. **2**, there is shown a block diagram of the various components of a terminal **5**. The operation of the terminal is controlled by a data processor **13**. To the left of the processor, various blocks represent the peripheral equipment which interfaces with the applicant. To the right of the processor there is shown a videodisc **14** on which are stored all the permanent data necessary for the operation of the terminal including the data necessary to effectuate the interactive and automatic request of information by the terminal from the applicant. A modem **15** provides a two-way communication channel with the financial institution **1** and the credit rating service **3**. The modem is controlled by the data processor **13** and handles a batch of information through a direct memory access unit **16**, to and from a RAM memory **17**. Thus, the RAM memory can be used to hold data obtained from the loan rate files **9** at the financial institution as well as applicant's financial profiles obtained from the credit rating service **3**. The RAM memory can also be used to store some of the operating routines necessary for the operation of the terminal.

Communication with the applicant is done mainly through the video screen **18**. The video screen **18** displays the picture of a fictitious loan officer who informs the applicant about the various types of loans available as well as the manner in which the application can be filed. The applicant answers the request of a loan officer by means of a touch pad **19** or a keyboard. Any entry made by the applicant on the touch pad **19** is processed and orally repeated immediately by means of a voice synthesizer **20** and loud speaker **21**. The oral expression of the answers provided by the applicant is a way to assure that no false entry is made. A magnetic strip reader **22** may be provided so that the applicant can give an account number or an identification by means of a credit card. A printer **23** is used to deliver to the applicant a hard copy of any loan quotation as well as a confirmation of his accepted loan.

FIG. **3** is a flow diagram of the system operation during the initial phase of the loan application process. The start **24**

4

of system operation is triggered either by the applicant pushing a start button or by the automatic detection of his presence in front of the terminal. Once the system is activated **25** the recording of an image and sound of a fictitious loan officer is read from the videodisc **14** and appears on the video screen **18**. The fictitious loan officer takes the applicant through a language selection routine **26–29**. In this case, the applicant is asked in both English and Spanish in what language the loan transaction is to be conducted. In this phase of the operation as well as all interactive communications between the loan officer and the applicant, the loan officer explains to the applicant how to enter his answer by means of the touch pad **19**. The applicant is then asked whether a previous quotation has already been prepared for him **30**. In the affirmative, he is then requested **31** to enter a pass number or identification number either by entering the number on the touch pad or by running his credit I.D. card through the strip reader **22**. The terminal then addresses the financial institution and requests **32** the prior loan quotation stored in the quoted case file **10** of the central processor **4**. This is done by the data processor **13** of the terminal dialing the institution phone number through the modem **15** and sending a request message. The terminal goes into a standby mode with its DMA unit **16** waiting for a transfer of information from the line into the RAM memory **17**. The continued operation depends on whether or not the previous quotation is found **34** to be on file. If the answer is negative, the fictitious loan officer instructs **35** the applicant how to proceed to apply for a loan. In the case where a previous quotation is found to be on file, that quotation is transferred to the terminal according to the program routine B illustrated in FIG. **5**.

FIG. **4** is the flow diagram of the system operation during the acquisition of information by the terminal from the applicant. The applicant is first asked to select **36** the type of loan in which he is interested. In this case, he is offered a menu allowing him to choose between a real estate loan **38**, a vehicle loan **39**, a personal loan **40** secured by an asset held by the financial institution or a personal unsecured loan **41**. Any invalid selection **37** triggers a new request. Once a type of loan has been selected, a real estate loan, for example, the fictitious loan officer asks a series of inquiries corresponding to the questions that would be found on a standard loan application form. For each question, the system performs a subroutine **42–45** designed to guarantee proper input of the information into the terminal memory **17**. If a problem develops during the question and answer period, the applicant is invited to call **44** the loan service at the financial institution. If the answer to a question is not received within fifteen seconds **45**, the process of application is presumed to have been abandoned by the applicant and the system returns to its initial standby state. Once all the proper answers have been accepted, they are processed **46** by the terminal data processor **13**. This process may involve analyzing certain key answers in order to identify any element or data that would automatically disqualify the applicant. Depending upon the result of that first analysis, more questions **47** may be presented to the applicant in order to refine the data necessary for a thorough assessment of his qualifications.

Turning now to FIG. **5**, the B subroutine used to receive a previous quotation from the financial institution is illustrated in the first flow diagram. Once the previous quotation is requested **48** the DMA unit **16** of the terminal is allowed to receive a batch of information containing the previous quotation. This batch of information is stored in the RAM memory **17** from where it is fetched **50** and displayed **51** on

US 6,289,319 B1

5

the video screen **18**. The applicant is then asked if he wants a hard copy **52** of the quotation. In the affirmative, the previous quotation is printed **53** on printer **23**. The second flow diagram corresponds to the acquisition of the applicant's financial profile from the credit rating service **3**. Once a loan quotation has been presented to thus applicant he is asked whether or not he wants to apply for the loan **54**. If his answer is negative, the fictitious loan officer expresses final greetings **55**. The loan quotation, if not already in storage at the financial institution, is transmitted there for temporary storage in the quoted case file **10** of the central processor **4**. If the applicant wishes to apply for the loan, he is asked to provide a password or identification **56** which will allow the terminal to access his file at the credit rating service **3**. As previously explained, this number can be entered directly by means of an identification card run through the strip reader **22** or entered manually **57** by means of the touch pad **19**. The terminal requests a rating **58** from the credit rating service **3** in a manner similar to the one used and described previously for obtaining a previous quotation from the financial institution. The applicant's financial profile is received as a batch of information through the DMA unit **59** and then read from the memory **60**. The financial profile is then analyzed by the terminal in order to compute **61** a debt ratio or other criterion devised by the financial institution to access the credit worthiness of the applicant. The debt ratio is the ratio of the applicant's current expenses to his current income. Other parameters such as debt to equity ratio or fixed assets to debt may be computed by the terminal data processor **13** and used in determining the qualifications of the applicant. It should be noted that the entire decision whether or not to grant the loan is performed automatically and onsite by the terminal **5** without intervention whatsoever from any of the financial institution personnel, except in case of a breakdown in communications by requesting a direct phone call by the applicant to the financial institution.

The last flow diagram on the drawing represents the final phase of the loan application transaction. Once the terminal equipment has determined that the applicant qualifies **62** for the loan, the applicant is so notified **63**, and instructed how to obtain the loan funds. The institution is also notified **65**, and the loan is processed through the active case file **11** by the central processor **4**. The fictitious loan officer closes the transaction by giving his final greetings **66** before the system is returned to a standby condition. If the applicant does not qualify for the amount of loan requested, he is first asked whether a lesser amount **67** would be acceptable to him. He is then instructed to enter the lesser amount **68** through the touch pad **19**. That new amount is then checked against the determination already made by the terminal. The process is repeated until an acceptable amount is requested by the applicant, or until such time as the applicant declines to proceed with the loan application.

It should be noted that the system as described could be applied to other forms of transactions in which information has to be acquired from a customer then processed to a decision or into the performance of a particular task. A similar system could be used, for instance, for the preparation and filing of income tax returns. In such case, the assistance that the fictitious person who appears on the video screen can give to the applicant in filling-out the tax form can be easily programmed on the videodisc.

Other applications of the system include the selection and purchase of stocks and other securities, the selection and opening of so-called "self-directed investments" such as Individual Retirement Accounts, and other complex transactions which normally require a great deal of time and attention on the part of the officers of an institution.

6

While the preferred embodiment of the invention has been described and other modifications have been suggested, other embodiments may be devised without departing from the spirit of the invention and the scope of the appended claims.

What is claimed is:

1. An automatic data processing system for processing business and financial transactions between entities from remote sites which comprises:

a central processor programmed and connected to process a variety of inquiries and orders transmitted from said remote sites;

said central processor including:

means for receiving information about said transactions from said remote sites;

means for retrievably storing said information;

at least one terminal at each of said remote sites including a data processor and operational sequencing lists of program instructions;

means for remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;

said terminal further comprising means for dispensing information and services for at least one of said entities including:

a video screen;

means for holding operational data including programing, informing, and inquiring sequences of data;

means for manually entering information;

means for storing information, inquires and orders for said transactions entered by one of said entities via said means for manually entering information, and data received through and from said central processor;

on-line means for transmitting said information, inquiries, and orders to said central processor;

on-line means for receiving data comprising operator-selected information and orders from said central processor via said linking means;

means for outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said means for entering information;

means for controlling said means for storing, means for outputting, and means for transmitting, including means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor;

said informing sequences including directions for operating said terminal, and for presenting interrelated segments of said operational data describing a plurality of transaction operations;

said programming sequences including means for interactively controlling the operation of said video screen, data receiving and transmitting means; and for selectively retrieving said data from said means for storing;

said means for storing comprising means for retaining said operational sequencing list and means responsive to the status of the various means for controlling their operation;

said central processor further including:

means responsive to data received from one of said terminals for immediately transmitting selected stored information to said terminal; and

US 6,289,319 B1

7

means responsive to an order received from a terminal for updating data in said means for storing; whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

2. The system of claim 1, wherein said terminal further comprises means for generating a personal qualification report including means for determining the type and amount of goods or services which can be provided to an entity wherein said means for determining comprises means for mathematically processing said information entered through said means for entering.

8

3. The system of claim 1, wherein said inquiring and informing sequences of data comprise textual and graphical data.

4. The system of claim 3, wherein said means for outputting further comprise means for generating audible informing and inquiring messages.

5. The system of claim 4, wherein said means for outputting further comprise means for synchronizing said audible messages with said textual and graphical data.

6. The system of claim 3, wherein said means for holding comprise an optical disc.

\* \* \* \* \*

US006289319C1

## (12) EX PARTE REEXAMINATION CERTIFICATE (5817th)

# United States Patent
Lockwood

(10) **Number:** US 6,289,319 C1

(45) **Certificate Issued:** Jul. 17, 2007

(54) **AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM**

(76) Inventor: **Lawrence B. Lockwood**, 5935 Folsom Dr., La Jolla, CA (US) 92037

**Reexamination Request:**
No. 90/006,623, May 5, 2003

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **6,289,319** |
| Issued: | **Sep. 11, 2001** |
| Appl. No.: | **08/347,270** |
| Filed: | **Nov. 30, 1994** |

**Related U.S. Application Data**

(63) Continuation of application No. 08/096,610, filed on Jul. 23, 1993, now abandoned, and a continuation of application No. 07/752,026, filed on Aug. 29, 1991, now abandoned, and a continuation of application No. 07/168,856, filed on Mar. 16, 1988, now abandoned, and a continuation of application No. 06/822,115, filed on Jan. 24, 1986, now abandoned, which is a continuation-in-part of application No. 06/613, 525, filed on May 24, 1984, now Pat. No. 4,567,359.

(51) **Int. Cl.**
*G06Q 40/00* (2006.01)

(52) **U.S. Cl.** ................................ **705/35**; 705/1; 705/38; 705/39

(58) **Field of Classification Search** .................... 705/1, 705/30–40; 707/1, 4, 6, 102; 706/20, 21; 715/700
See application file for complete search history.

(56) **References Cited**

PUBLICATIONS

"Electronic Mail", American Media Group 1986.*
Viewdata, "First World Conference on Viewdata & Tele-Text", Mar. 26–28, 1980, London, published by Online Conferences Ltd., Northwood Hills, Middx.*
Comp–U–Store System Could Change Retail Economics, Interview with Erik Shelton, president Consumer Electronic Service, Jul. 1983.*

GloveCom 1982, IEEE Global Communications Conference, Conference Record, vol. 3 of 3, LC 82–82566, IEEE Catalog No. 82CH1819–2.*
"CD Airs Electronic Catalog on Toronto", Discount Store News, The Newspaper of the Discount Department Store Industry, vol. 22, No. 3, published Biweekly, by Arthur Markowitz, Feb. 7, 1983.*
Prestel 1980, Sample images of Prestel 1980.*
Kleinberg, "How Video Will Change the Sale", Apr. 1981, Industrial Marketing.*
IVIS Puts the Power of Sight, Sound and Touch Into Your Information Picture, 1984. Digital Equipment Corporation.*
"P–oP Video disc Devices Help Clerk Sells More Products", Merchandising, Jan. 1984.*
"Improving Retail Productivity", How Retailers and Suppliers Can Improve Their Use of Stock, Space, Staff and System, An Iris executive conference, Thursday Oct. 20, 1983.*
Browning, Graeme, UPI Business Writer, UPSI, Regional News, Nov. 1, 1983, Tuesday, BC cycle.*

* cited by examiner

*Primary Examiner*—Frantzy Poinvil

(57) **ABSTRACT**

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series od self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The terminal is programmed to acquire credit rating data relating to the applicant from the credit rating service, and to use the data to compute the credit worthiness of the applicant and the amount which may be loaned to him. The approved loan information is then



**US 6,289,319 C1**

Page 2

transmitted to the first computer for further processing by
the financial institution.

US 6,289,319 C1

| 1 | 2 |

# EX PARTE REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claim **1** is determined to be patentable as amended.

Claims **2–6**, dependent on an amended claim, are determined to be patentable.

New claims **7–28** are added and determened to be patentable.
+ig

**1**. An automatic data processing system for processing business and financial transactions between entities from remote sites which comprises:

  a central processor programmed and connected to process a variety of inquiries and orders transmitted from said remote sites;

  said central processor including:
    means for receiving information about said transactions from said remote sites;
    means for retrievably storing said information;
    at least one terminal at each of said remote sites including a data processor and operational sequencing lists of program instructions;
    means for remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;
    said terminal further comprising means for dispensing information and services for at least one of said entities including:
      a video screen;
      means for holding operational data including programing, informing, and inquiring sequences of data;
      means for manually entering information;
      means for storing information, [inquires] *inquiries* and orders for said transactions entered by one of said entities via said means for manually entering information, and data received through and from said central processor;
      on-line means for transmitting said information, inquiries, and orders to said central processor;
      on-line means for receiving data comprising operator-selected information and order from said central processor via said linking means;
      means for outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said means for entering information;
      means for controlling said means for storing, means for outputting, and means for transmitting, including means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor;

said informing sequences including directions for operating said terminal, and for presenting inter-related segments of said operational data describing a plurality of transaction operations;

said programming sequences including means for interactively controlling the operation of said video screen, data receiving and transmitting means; and for selectively retrieving said data from said means for storing;

said means for storing comprising means for retaining said operational sequencing list and means responsive to the status of the various means for controlling their operation;

said central processor further including:
    means responsive to data received from one of said terminals for immediately transmitting selected stored information to said terminal; and
    means responsive to an order received from a terminal for updating data in said means for storing;
    whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

*7. The system of claim 1, wherein said means for storing comprise a Random Access Memory associated with said data processor.*

*8. The system of claim 1, wherein said means for holding operational data comprise a mass memory device.*

*9. The system of claim 8, wherein said mass memory device comprises a storage disk.*

*10. The system of claim 1, wherein said programming sequences comprise operational data received from said central processor for selecting program instructions from said means for storing and said means for holding, and executing said program instructions.*

*11. The system of claim 1, wherein said inquiring sequences comprise questions to be presented to an operator of said terminal.*

*12. The system of claim 11 which further comprises means for presenting said questions in audio-visual form.*

*13. The system of claim 12, wherein said audio-visual form comprises images of a fictitious person.*

*14. The system of claim 1, wherein said transactions comprise purchase of stock and securities.*

*15. The system of claim 1, wherein said transactions comprise filing of income tax returns.*

*16. The system of claim 1, wherein said transactions comprise obtaining a loan.*

*17. The system of claim 1, wherein said transactions comprise opening of an investment account.*

*18. The system of claim 1, wherein said dispensing information and services comprises displaying information received from said central processor.*

*19. The system of claim 1, wherein said preset routines are held in said means for storing.*

*20. The system of claim 1, wherein said means for controlling is operative to direct at least one of said inquiring sequence to said central processor.*

*21. The system of claim 3, wherein said textual data comprises letters, words, phrases and numbers.*

*22. The system of claim 3, wherein said graphical data comprise business and financial transaction forms.*

*23. The system of claim 3, wherein said graphical data further comprises business and financial charts.*

*24. The system of claim 1, wherein said business and financial transactions are performed by an agent of said entity.*

US 6,289,319 C1

**3**

*25. The system of claim 1, wherein said means for transmitting comprise a communication network.*

*26. The system of claim 25, wherein said communication network comprises a telephone line.*

*27. The system of claim 1, wherein said directions for operating said terminal, and for presenting interrelated*

**4**

*segments of said operational data describing a plurality of transaction operations comprise menus.*

*28. The system of claim 11, wherein said questions are presented as menus.*

* * * * *

(12) **EX PARTE REEXAMINATION CERTIFICATE** (9470th)

# United States Patent

Lockwood

(10) **Number:** US 6,289,319 C2

(45) **Certificate Issued:** Jan. 9, 2013

---

(54) **AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM**

(76) Inventor: **Lawrence B. Lockwood**, La Jolla, CA (US)

**Reexamination Request:**
No. 90/012,641, Sep. 14, 2012

**Reexamination Certificate for:**
| | |
|---|---|
| Patent No.: | **6,289,319** |
| Issued: | **Sep. 11, 2001** |
| Appl. No.: | **08/347,270** |
| Filed: | **Nov. 30, 1994** |

Reexamination Certificate C1 6,289,319 issued Jul. 17, 2007

**Related U.S. Application Data**

(63) Continuation of application No. 08/096,610, filed on Jul. 23, 1993, now abandoned, and a continuation of application No. 07/752,026, filed on Aug. 29, 1991, now abandoned, and a continuation of application No. 07/168,856, filed on Mar. 16, 1988, now abandoned, and a continuation of application No. 06/822,115, filed on Jan. 24, 1986, now abandoned, which is a continuation-in-part of application No. 06/613,525, filed on May 24, 1984, now Pat. No. 4,567,359.

(51) **Int. Cl.**
*G06Q 40/00* (2006.01)

(52) **U.S. Cl.** ................ **705/35**; 705/1.1; 705/38; 705/39

(58) **Field of Classification Search** ........................ None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/012,641, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Karin Reichle

(57) **ABSTRACT**

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The terminal is programmed to acquire credit rating data relating to the applicant from the credit rating service, and to use the data to compute the credit worthiness of the applicant and the amount which may be loaned to him. The approved loan information is then transmitted to the first computer for further processing by the financial institution.



US 6,289,319 C2

**1**

**EX PARTE
REEXAMINATION CERTIFICATE
ISSUED UNDER 35 U.S.C. 307**

NO AMENDMENTS HAVE BEEN MADE TO
THE PATENT

**2**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

The patentability of claims **1-28** is confirmed.

\* \* \* \* \*

# EXHIBIT B

(12) **EX PARTE REEXAMINATION CERTIFICATE** (5817th)

# United States Patent
Lockwood

(10) **Number:** US 6,289,319 C1

(45) **Certificate Issued:** Jul. 17, 2007

(54) **AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM**

(76) Inventor: **Lawrence B. Lockwood**, 5935 Folsom Dr., La Jolla, CA (US) 92037

**Reexamination Request:**
No. 90/006,623, May 5, 2003

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **6,289,319** |
| Issued: | **Sep. 11, 2001** |
| Appl. No.: | **08/347,270** |
| Filed: | **Nov. 30, 1994** |

**Related U.S. Application Data**

(63) Continuation of application No. 08/096,610, filed on Jul. 23, 1993, now abandoned, and a continuation of application No. 07/752,026, filed on Aug. 29, 1991, now abandoned, and a continuation of application No. 07/168,856, filed on Mar. 16, 1988, now abandoned, and a continuation of application No. 06/822,115, filed on Jan. 24, 1986, now abandoned, which is a continuation-in-part of application No. 06/613,525, filed on May 24, 1984, now Pat. No. 4,567,359.

(51) **Int. Cl.**
*G06Q 40/00* (2006.01)

(52) **U.S. Cl.** ............................... **705/35**; 705/1; 705/38; 705/39

(58) **Field of Classification Search** .................... 705/1, 705/30–40; 707/1, 4, 6, 102; 706/20, 21; 715/700
See application file for complete search history.

(56) **References Cited**

PUBLICATIONS

"Electronic Mail", American Media Group 1986.*
Viewdata, "First World Conference on Viewdata & Tele-Text", Mar. 26–28, 1980, London, published by Online Conferences Ltd., Northwood Hills, Middx.*
Comp–U–Store System Could Change Retail Economics, Interview with Erik Shelton, president Consumer Electronic Service, Jul. 1983.*

GloveCom 1982, IEEE Global Communications Conference, Conference Record, vol. 3 of 3, LC 82–82566, IEEE Catalog No. 82CH1819–2.*
"CD Airs Electronic Catalog on Toronto", Discount Store News, The Newspaper of the Discount Department Store Industry, vol. 22, No. 3, published Biweekly, by Arthur Markowitz, Feb. 7, 1983.*
Prestel 1980, Sample images of Prestel 1980.*
Kleinberg, "How Video Will Change the Sale", Apr. 1981, Industrial Marketing.*
IVIS Puts the Power of Sight, Sound and Touch Into Your Information Picture, 1984. Digital Equipment Corporation.*
"P–oP Video disc Devices Help Clerk Sells More Products", Merchandising, Jan. 1984.*
"Improving Retail Productivity", How Retailers and Suppliers Can Improve Their Use of Stock, Space, Staff and System, An Iris executive conference, Thursday Oct. 20, 1983.*
Browning, Graeme, UPI Business Writer, UPSI, Regional News, Nov. 1, 1983, Tuesday, BC cycle.*

* cited by examiner

*Primary Examiner*—Frantzy Poinvil

(57) **ABSTRACT**

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series od self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The terminal is programmed to acquire credit rating data relating to the applicant from the credit rating service, and to use the data to compute the credit worthiness of the applicant and the amount which may be loaned to him. The approved loan information is then



**US 6,289,319 C1**

Page 2

transmitted to the first computer for further processing by
the financial institution.

US 6,289,319 C1

## 1

# EX PARTE REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claim **1** is determined to be patentable as amended.

Claims **2**–**6**, dependent on an amended claim, are determined to be patentable.

New claims **7**–**28** are added and determened to be patentable.

+ig
**1**. An automatic data processing system for processing business and financial transactions between entities from remote sites which comprises:

a central processor programmed and connected to process a variety of inquiries and orders transmitted from said remote sites;

said central processor including:

means for receiving information about said transactions from said remote sites;

means for retrievably storing said information;

at least one terminal at each of said remote sites including a data processor and operational sequencing lists of program instructions;

means for remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;

said terminal further comprising means for dispensing information and services for at least one of said entities including:

a video screen;

means for holding operational data including programing, informing, and inquiring sequences of data;

means for manually entering information;

means for storing information, [inquires] *inquiries* and orders for said transactions entered by one of said entities via said means for manually entering information, and data received through and from said central processor;

on-line means for transmitting said information, inquiries, and orders to said central processor;

on-line means for receiving data comprising operator-selected information and order from said central processor via said link linking means;

means for outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said means for entering information;

means for controlling said means for storing, means for outputting, and means for transmitting, including means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor;

## 2

said informing sequences including directions for operating said terminal, and for presenting inter-related segments of said operational data describing a plurality of transaction operations;

said programming sequences including means for interactively controlling the operation of said video screen, data receiving and transmitting means; and for selectively retrieving said data from said means for storing;

said means for storing comprising means for retaining said operational sequencing list and means responsive to the status of the various means for controlling their operation;

said central processor further including:

means responsive to data received from one of said terminals for immediately transmitting selected stored information to said terminal; and

means responsive to an order received from a terminal for updating data in said means for storing;

whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

*7. The system of claim 1, wherein said means for storing comprise a Random Access Memory associated with said data processor.*

*8. The system of claim 1, wherein said means for holding operational data comprise a mass memory device.*

*9. The system of claim 8, wherein said mass memory device comprises a storage disk.*

*10. The system of claim 1, wherein said programming sequences comprise operational data received from said central processor for selecting program instructions from said means for storing and said means for holding, and executing said program instructions.*

*11. The system of claim 1, wherein said inquiring sequences comprise questions to be presented to an operator of said terminal.*

*12. The system of claim 11 which further comprises means for presenting said questions in audio-visual form.*

*13. The system of claim 12, wherein said audio-visual form comprises images of a fictitious person.*

*14. The system of claim 1, wherein said transactions comprise purchase of stock and securities.*

*15. The system of claim 1, wherein said transactions comprise filing of income tax returns.*

*16. The system of claim 1, wherein said transactions comprise obtaining a loan.*

*17. The system of claim 1, wherein said transactions comprise opening of an investment account.*

*18. The system of claim 1, wherein said dispensing information and services comprises displaying information received from said central processor.*

*19. The system of claim 1, wherein said preset routines are held in said means for storing.*

*20. The system of claim 1, wherein said means for controlling is operative to direct at least one of said inquiring sequence to said central processor.*

*21. The system of claim 3, wherein said textual data comprises letters, words, phrases and numbers.*

*22. The system of claim 3, wherein said graphical data comprise business and financial transaction forms.*

*23. The system of claim 3, wherein said graphical data further comprises business and financial charts.*

*24. The system of claim 1, wherein said business and financial transactions are performed by an agent of said entity.*

US 6,289,319 C1

**3**

25. The system of claim 1, wherein said means for transmitting comprise a communication network.

26. The system of claim 25, wherein said communication network comprises a telephone line.

27. The system of claim 1, wherein said directions for operating said terminal, and for presenting interrelated

**4**

segments of said operational data describing a plurality of transaction operations comprise menus.

28. The system of claim 11, wherein said questions are presented as menus.

\* \* \* \* \*

# EXHIBIT C

Exhibit C
23

(12) **EX PARTE REEXAMINATION CERTIFICATE** (9470th)

# United States Patent

Lockwood

(10) **Number:** US 6,289,319 C2

(45) **Certificate Issued:** Jan. 9, 2013

(54) **AUTOMATIC BUSINESS AND FINANCIAL TRANSACTION PROCESSING SYSTEM**

(76) Inventor: **Lawrence B. Lockwood**, La Jolla, CA (US)

**Reexamination Request:**
No. 90/012,641, Sep. 14, 2012

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **6,289,319** |
| Issued: | **Sep. 11, 2001** |
| Appl. No.: | **08/347,270** |
| Filed: | **Nov. 30, 1994** |

Reexamination Certificate C1 6,289,319 issued Jul. 17, 2007

**Related U.S. Application Data**

(63) Continuation of application No. 08/096,610, filed on Jul. 23, 1993, now abandoned, and a continuation of application No. 07/752,026, filed on Aug. 29, 1991, now abandoned, and a continuation of application No. 07/168,856, filed on Mar. 16, 1988, now abandoned, and a continuation of application No. 06/822,115, filed on Jan. 24, 1986, now abandoned, which is a continuation-in-part of application No. 06/613,525, filed on May 24, 1984, now Pat. No. 4,567,359.

(51) **Int. Cl.**
*G06Q 40/00* (2006.01)

(52) **U.S. Cl.** ................ **705/35**; 705/1.1; 705/38; 705/39

(58) **Field of Classification Search** ........................ None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/012,641, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Karin Reichle

(57) **ABSTRACT**

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The terminal is programmed to acquire credit rating data relating to the applicant from the credit rating service, and to use the data to compute the credit worthiness of the applicant and the amount which may be loaned to him. The approved loan information is then transmitted to the first computer for further processing by the financial institution.



Exhibit C
24

US 6,289,319 C2

**1**

## EX PARTE
## REEXAMINATION CERTIFICATE
## ISSUED UNDER 35 U.S.C. 307

NO AMENDMENTS HAVE BEEN MADE TO
THE PATENT

**2**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

The patentability of claims **1-28** is confirmed.

\* \* \* \* \*

Exhibit C
25